Call the next case for argument. Case number 19-3154, Western Missouri, Turtle Island Foods et al. v. Locke Thompson et al. Alright, Mr. Rother, we'll hear from you first. Thank you, your honor, and may it please the court. We appeal from the denial of a preliminary injunction to prohibit a defendant class of 115 prosecuting attorneys in Missouri from forcing Missouri's new criminal law against the use of meaty terms, meat nomenclature, for food like that the Tofurky makes and markets and sells throughout Missouri, unless that the defendant class did not oppose the motion for a preliminary injunction, but the state of Missouri intervened and did so. This appeal is narrow. The parties largely agree that this case turns on the first data phase factor, likelihood of success on the merits, and the state does not dispute at this point in the case appellee's arguments on the three prongs of the central Hudson test beyond the threshold question of whether speech is false or inherently misleading that is prohibited by the statute. The district court found that the plaintiffs were not likely to succeed because it interpreted section 265.494 as prohibiting only false statements, literally false statements of fact, and therefore concluded that it doesn't implicate plaintiff's speech, and relatedly the defendant's lack of standing. The key question on appeal resolves both issues, and that is whether appellee's intended speech is arguably subject to the criminal sanctions of the law. The district court concluded that the statute does not prohibit their speech, and on appeal the state argues that the plain text of the even arguably, but both are wrong for three reasons. First, the text of the statute itself, second, the guidance from the Department of Agriculture, and third, the proceedings in Arkansas involving a similar law. The statute talks about misrepresenting a product as meat. Do your clients use that word meat in their advertising, or do you have to, or is it your argument that meat also means meat-related terms? Is our argument that, and the state and the Department of Agriculture agree with us that it includes meat-related terms, nomenclature, burgers, sausages, meat-related terms, in addition to specifically meat. And the state argues that the statute does not prohibit using such meaty terms if appropriate qualifiers are used. It says that at page 38 of its brief, page 41, page 42, that there has to be an appropriate qualifier saying that something is plant-grown. But the statute does not say that, and other subsections of the same statute do require qualifiers. Subsection 5 requires disclosure and 10-point type of certain charges. Subsection 9 requires a grade name, and at least in large and conspicuous terms. Subsection 11 requires certain disclosures and 10-point type. So if that's what the legislature intended, was to require disclosures as the state and the district court suggest, then it could have done so, and it didn't. I have another question about the statute, and maybe you can clear this up for me, but the introductory sentence in the statute seems to limit it to any person who advertises or sells animal products. And so why is TOEFRKI even under this particular statute? I think that's a very good question. The statute is not the most artfully drawn. We know that, and one way to read it is that it only applies to people who are selling animal products. It would be difficult to know what the restriction is then, if it's not animal products. The Department of Agriculture... Well, it could be that someone selling, maybe someone selling animal products, who then kind of does a bait and switch, and which one is animal-based meat, and which one is plant-based meat product. I don't know, and maybe that's a possibility. Well, the comments that we have, the information in the record about the motivation for the law suggests that it's targeting producers of plant-based meat. The Department of Agriculture memo interpreting the law thinks that it is targeting plant-based meats. So that's been the interpretation, and the question really is if TOEFRKI is arguably covered by the law, if their intended speech is arguably subject to the law. You know, I'll skip ahead to Arkansas, where a nearly identical law was passed and challenged, and there the Attorney General took the position that TOEFRKI was covered and was violating the law. So for the purposes of a preliminary injunction, we have TOEFRKI's intended speech, and what we're arguing is that it's arguably subject to the law. If the Attorney General of Arkansas can think it's subject to the law, then one of the 115 prosecutors who independently decide these things in Missouri can decide they're subject to the law, and if the Department of Agriculture in its memo thinks that TOEFRKI is subject to the law on plant-based producers, then again, they are arguably subject to the law. TOEFRKI's not... Let me ask you this. I'm not sure the analogy to the Arkansas statute really works, because it's a different statute, but let's put that aside for a minute. Isn't the real crux of this dispute the term misrepresenting a product? I mean, the state's taken the position that as long as it's clear on the face of the packaging that it's not animal-based, but it's plant-based, that you're not misrepresenting the product. Now, I will grant you, Mr. Rother, and I'll probably ask Mr. Smith about this. I think the actual Department of Agriculture regulations muddy the water. I think they make it more confusing rather than helpful, but as long as you're not representing that the product you're worrying. Well, let me just say that we are not suggesting that the product is animal-based, and in fact, that's not a very good business model. And that's to understand the point of the dispute. They're saying you do not want people to think it's animal-based, therefore, you're not misrepresenting that it's animal-based. So what's your complaint? Well, the question again is whether we're arguably subject to the law. The legislative history that there is of why the law was passed, the legislators saying why they passed it, was to target speech like Tofurkey's. The Department of Agriculture and the state are only talking about labels, but the statute goes much further and also marketing, advertising, and any written or oral speech. And I guess that would be my main answer in the department of why we're worried about it. Certainly using these meaty terms is important to Tofurkey being able to describe the texture of what people should expect. Like peanut butter, no one's fooled, but I don't think anyone thinks there's butter in peanut butter. There isn't, but it tells you what texture to expect. Fruity pebbles doesn't have fruit in it, but it tells you the taste. The appearance of the food is something Tofurkey wants to share. And baby carrots don't have babies, but they describe how the carrots appear. And in St. Louis concretes describe a thick custard, but there's no concrete in them. So it's very ordinary in food and in language to use terms to describe food so people know what they're getting. And that is what the proponents of this law were trying to stop. And they were quite candid about what they were trying to do. And I think that the Department of Agriculture memo supports that. Also, there's no... Do you understand the Department of Agriculture memo to require that there be an explicit prominent, for want of a better term, disclaimer on the product? I think it does require a disclaimer and prominent. It has its own issues of exactly what is required and where it is. And even though the state says that the labels that are in the record meet it, they don't. They don't all. So I think it brings up even more questions about what is covered and makes our clients concerned that they could face jail. That's a difference from Arkansas. There's no jail time had issue in Arkansas. It was just civil penalties. When we get to the merits of the case, it's really the central Hudson. We think heightened scrutiny applies because this is content-based and speaker-based restriction on speech. But at this stage, at least, central Hudson, I guess you could call it normal scrutiny should apply. It's intermediate, but it's somewhat heightened. And the real burden is on the government, on all the prongs. And we only have a dispute about the threshold question. The threshold question is whether the statute is limited to unlawful or inherently misleading speech, not potentially misleading. And we agree it's potentially misleading for to use meat-related terms to describe things that are not harvested from animals, from livestock. But the statute says meat nomenclature is per se misrepresentation. And this representation equals misleading. No one's argued our speech is inherently misleading, like in the Adena's case and Gary Peel against ARDC in 1990s, potentially misleading speech does not fail the threshold question of central Hudson. I'd like to reserve the remaining time for rebuttal. Very well, Mr. Smith, we'll hear from you. Thank you, your honor. May it please the go to Judge Molloy's question, because the state agrees that the crux of this case turns on the word misrepresent in the statute, because that word has an important definition under Missouri law. And that means the use of any untrue, misleading, or deceptive oral or written statement. And it goes on listing other categories. That's important because that is taking a position in this case, that the labels submitted as evidence by Tofurky do not run afoul of the state statute, because that they are not untrue, misleading, or deceptive. And that's in light of the different qualifiers that were pointed out during the Mr. Rother's argument. There are multiple words on these seven labels, veggie, vegan, plant-based. These words show that a reasonable consumer would not be misled or deceived by those products. And those seven labels that Tofurky submitted are the only evidence that Tofurky has submitted of speech that would be that they claim is subject to the statute. Opposing counsel made the comment that the state is only focused on labels, that the statute covers advertisements and other forms of expression. But we don't have any of those other forms of advertisement submitted by Tofurky in the record. So we are focused on labels for that reason. The judge will ask a question about the Department of Agriculture's memorandum. And I'd like to discuss that for a moment. The Department of Agriculture's memorandum was issued two days after the law took effect in an attempt by the department to give guidance regarding how the department would handle enforcement referrals under the new law. And the department did not require any specific types of words or such. It simply said if labels have qualifiers such as these, they would not be And there's an important sentence on page two of that memorandum that says that if the product is marketed as a meat product but does not contain any disclosure that is derived from sources other than harvested production livestock or poultry, then the product may be suspected of violating the new statute. And so that language suggested that the department was going to give a lot of and ensure that there was no explicit requirements for words or locations before the department considered any referrals. Mr. Smith, the guidance from the Department of Agriculture is just that. It's not part of the statute. So how could a company, whether it's It even says that it can be changed as necessary in the future. Yes, your honor, that's right. It does say that and the guidance is simply the department's expression of how it attempted to implement the statute under its statutory responsibilities under 265.497 to inspect products throughout the state and make referrals to the county prosecutors and notify the attorney general of any suspected violations. So you're right, it could be subject to challenge, to change. But the important thing to notice as we get back to the definition of misrepresent in the statute, that can't change. And that still remains the, you know, it's focused on the use of any untrue, misleading, or deceptive statement. And so regardless of what the department does with how it makes referrals, the statute protects against the enforcement against something that is as much broader as Toferky attempts to suggest. I'd also like to mention that the Arkansas case, we agree that it's not exactly the same because it is a different statute. The Arkansas had six different provisions that were challenged. Some of those provisions had language such as that you could not sell under the name of another food, or that it adopted the definitions and standards of identity for products that were already in existence under state or federal law. And importantly, between Arkansas and Missouri, Arkansas uses the phrase, represent a product as meat, rather than Missouri, which uses misrepresent. And this is an important point that I don't want to lose because in Missouri law, represent is actually a defined term in 265.490 as well. And it means the use of any form of oral or written statement, advertisement, etc. It's much more specific than misrepresent, which is the use of untrue, misleading, or deceptive statement. That's a very important distinction between Missouri law and Arkansas law. And in Arkansas, as Mr. Rother pointed out, the state did take the position that there was enforcement, and the state argued that the Toferky labels were inherently misleading, as a matter of fact. And the court did the analysis that we were just discussing a few minutes ago, where it looked at the same seven labels that we have in the record before us, and it pointed out the different uses of vegan, vegetarian, and plant-based, to find that those were not misleading. And so the district court's opinion in Arkansas is actually consistent with the state's position here, that those labels are not misleading, and therefore would not be subject to the Missouri statute. Judge Mollet, I'm sorry. No, go ahead. What's your answer to Judge Kelly's question to Mr. Rother, about whether the statute applies only to people who sell meat, and therefore has no application to Toferky, regardless of the meaning of subsection 7? So I would agree with Mr. Rother, that to read it that way would appear to make superfluous the language that was passed in 2018. And so the state has taken the position, as Mr. Rother rightly pointed out, that it would apply more broadly to products that are not meat-based, but only if they are misleading. You mean subsection 7 was added after the rest of the statute was already in place, and so you say it wouldn't make sense to add 7? Yes, your honor. But you still have a preamble that says the object of the prohibition is someone who sells meat. I don't know. Yeah, so the entire statute was passed in 1985, and my recollection is that the only change made in the But I don't have the statutory history in front of me, and it was not part of the record below. The preamble, you're right, does talk about a carcass or food plan, and the definition of food plan is also a little ambiguous about how far that would reach, and so that might also be... What's ambiguous about it? It says a plan offering meat for sale. And then it talks about with combination with each other, with any other food or non-food product, so it does appear to encompass non-meat products at the end of subsection 3 and 265.490. If they're offered together with meat. Yes, your honor. I still don't understand why you think that means someone who's selling exclusively non-meat would ever be covered. You may proceed. Thank you, your honor. I'd also like to switch gears and point out, Mr. Rothert made the argument that the case rises or falls only on the likelihood of success on the merits. I submit that there is one of the other data phase factors that also could turn this case, and that's the threat of irreparable harm. We've had this statute in place for more than two years now. I did the calculation this morning, it's been 815 days, and there's been no evidence in the record of any prosecutions, any threat of prosecutions, or any referrals by the Department of Agriculture for any product, but especially not for any Tofurky product. And so there's no threat of irreparable harm. And without that threat of irreparable harm, the Tofurky cannot make its case for an injunction at this stage. And I would also point out that the prosecutor that the plaintiff sued, the Cole County prosecutor in Central Missouri, was certified as a class representative. Plaintiffs argued that he was adequate and and that class representative has argued that on multiple occasions in the record, you see at the appendix page 37 and page 115, that he has neither initiated nor had cause to consider initiating any prosecution under the statute identified by plaintiffs. He has not filed and is not considering filing any charges for violations of 265.494 subsection 7. So the only prosecutor that's been present in this case and the class representative that plaintiffs chose is that he's not attempted to enforce the statute and has no plans to do so. So appellants had the burden below to show a threat of irreparable harm, and they failed to do so. And in data phase footnote 9 says that the absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction. And so that's why this is an important factor given the time that this case has been underway to point out that there is just not that evidence to show irreparable harm that would justify the preliminary injunction appellant sought. Because of that lack of irreparable harm, the state argued below and here on appeal that there's just simply no standing or likeness present. Because there's not the threatened injury is not certainly impending or there's not a substantial risk of injury as the Supreme Court cases have said is necessary to establish standing. I think specifically if you're to walk through the two appellants here, you have the Good Food Institute, which doesn't allege that it sells any products. It doesn't allege that it's itself at prosecution. Its only argument is that it's had to hire some additional staff and spend some time looking at the new statute and telling people about it. That certainly can't be enough to establish standing. For Tofurky, again, there's been no evidence that they have received any threats of prosecution. They haven't shown that they have considered changing their conduct or their labels for products they're selling into Missouri. Not to say that they would have to show that. But there's been no evidence that there's been a chilling effect on Tofurky. And so the evidence does not establish that either of the appellants have standing. And so the case should be dismissed on standing or likeness grounds as well. If there are no further questions, then I appreciate the court's time. All right. Thank you for your argument, Mr. Smith. Mr. Rothert, we'll hear from you in rebuttal. As to their reputable harm, it's not surprising that there have been no prosecutions and that there were never any complaints about people being confused about this issue before the law was passed. But this is a First Amendment case, and what we've alleged is a chilling effect, as in Clark, especially where there's possibility of jail time here. And Mr. Rothert, you spoke about advertisements and other types of representations about your product that the companies are concerned about. But what about the position that the state takes that, well, there's nothing, none of that's in the record. All we've got are these, what, seven labels. And if you didn't put anything in the record, how can that be assessed? Yes. Well, we asked for an evidentiary hearing, and we did not receive an evidentiary hearing. But even the labels that are in the record do not comply with what the state says the test is, the chorizo sausage, for instance. So even if we're looking at just what's in the record. And I would also say that in Stevens, no one had been prosecuted for hunting videos, but the Supreme Court still considered that possibility in deciding that a statute directed it prohibiting crush videos violated the First Amendment. So I think, especially with this court's decision in Clark, that the chilling effect is available here. And it's wonderful that the department's going to give leeway, as they said, but as Judge Cully noted, it's non-binding. They're not the ones who enforce the law. Everything that's in the memo is beyond the statute. There's nothing about qualifications in the statute. And really importantly, Missouri courts do not defer to agencies at all on interpretations of the law. Burlington National Railroad against Department of Revenue in 1990, the Missouri Supreme Court, said that. So it's a completely de novo review. And while it might seem great to have this court say that the law doesn't apply to Tofurky at all and only to meat sellers, that this court's decision is also not binding on Missouri courts. So they can interpret it differently. Mr. Rothard, I pulled up this chorizo sausage after you mentioned here, just to make sure I was tracking your argument. If I'm looking at the right package, it says right next to chorizo style sausage made with pasture raised plants. Is that the one you're referring to? And why does that not comply with the guidance? Well, the guidance says where the qualifiers have to appear in relation to the meaty terms. And immediately before or immediately after the product name. Right. So, you know, it's not... It's immediately before when it's right next to it on the left? I don't know if that's the label that's in the record then. I see. There have been some Finally, I just wanted to thank the court for the time, say there's no evidence of consumers not understanding the purposes here. Baby oils not from babies, Girl Scout cookies don't contain Girl Scouts, and no one's fooled by Tofurky's smoked ham style. And no one's trying to fool anyone. But reasonable people could conclude or could decide to prosecute Tofurky and therefore preliminary injunction is appropriate. Thank you. Very well. Thank you to both counsel for your arguments. The case is